# Commonwealth of Massachusetts

BARNSTABLE, ss.                                                  SUPERIOR COURT


I, John S. Dale, First Assistant Clerk of the Superior Court within and for said County of

Barnstable, having, by law, the custody of the seal and all the records, books, documents and

papers of, or appertaining to said Court, hereby certify that the papers hereto annexed are true

copies of the papers appertaining to said Court, and on file and of record in the Office of said

Court, relating to the case of STEVEN SURABIAN, Plaintiff vs. HSBC BANK USA, NA as

TRUSTEE SEQUOIA MORTGAGE TRUST 2004-6, Defendant, case #10-181.


In witness whereof, I have hereunto set my

hand and the seal of said Court, this

twenty-eighth day of April in the year of

our Lord two thousand ten.

_____
                                    First Assistant Clerk

**Commonwealth of Massachusetts**
**BARNSTABLE SUPERIOR COURT**
Case Summary
Civil Docket

12:40 PM

# BACV2010-00181
## Surabian v HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 03/25/2010 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 04/28/2010 | **Session** | A - Main session-Barnstable Superior | | |
| **Origin** | 1 - Complaint | **Case Type** | D99 - Misc equitable remedy | | |
| **Track** | F - Fast track | **Lead Case** | | **Jury Trial** | Unknown |

### DEADLINES

| | Service | Answer | Rule12/19/20 | Rule 15 | Discovery | Rule 56 | Final PTC | Judgment |
|---|---|---|---|---|---|---|---|---|
| **Served By** | | | 07/23/2010 | 07/23/2010 | 01/19/2011 | 02/18/2011 | | |
| **Filed By** | 06/23/2010 | 07/23/2010 | 08/22/2010 | 08/22/2010 | | 03/20/2011 | | 01/14/2012 |
| **Heard By** | | | 09/21/2010 | 09/21/2010 | | | 07/18/2011 | |

### PARTIES

**Plaintiff**
Steven Surabian
1230 Route 28
South Yarmouth, MA 02664
Phone: 508-688-4613
Dismissed by Court Order 04/28/2010 Notify

**Defendant**
  HSBC Bank USA, NA as Trustee Sequoia
Mortgage Trust 2004-6
10 East 40th Street
14th Floor
New York, NY 10016
Dismissed by Court Order 04/28/2010

**Private Counsel 666128**
Joseph P Calandrelli
Prince Lobel Glovsky & Tye LLP
100 Cambridge Street Ste 2200
Boston, MA 02114
Phone: 617-456-8000
Fax: 617-456-8100
Active 04/26/2010 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 03/25/2010 | 1.0 | COMPLAINT & civil action cover sheet filed |
| 03/25/2010 | | Origin 1, Type D99, Track F. |
| 03/25/2010 | | Filing fee paid in the amount of $275.00 including $15.00 surcharge and $20.00 security fee. |
| 03/25/2010 | 2.0 | MOTION: Plaintiffs for Preliminary Injunction |
| 03/26/2010 | | Motion (P#2) ALLOWED as to order of notice only. (John S. Dale, First Assistant Clerk) |
| 03/26/2010 | | Summons and order of notice issued; returnable 4/22/2010 |
| 04/26/2010 | 3.0 | Defendant, HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6, Notice of removal to the United States District Court |
| 04/28/2010 | | Case REMOVED this date to US District Court of Massachusetts; copies mailed to atty |

### EVENTS

| Date | Session | Event | Result |
|---|---|---|---|
| 04/21/2010 | Main session-Barnstable | Status: administrative | Event held as scheduled |
| | | l/m for Joseph Calandrelli that we need attested copy of notice of removal to proceed with forwarding cert. copy to them as well as | |

MASXP-20091228
birelyka

04/28/2010
12:40 PM

**Commonwealth of Massachusetts**
**BARNSTABLE SUPERIOR COURT**
Case Summary
Civil Docket

## BACV2010-00181
## Surabian v HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 04/21/2010 | Main session-Barnstable | Status: administrative check (amt not figured yet) | Event held as scheduled |
| 04/22/2010 | Main session-Barnstable | Motion/Hearing: prel inj | Event canceled not re-scheduled |
| 04/26/2010 | Main session-Barnstable | Status: administrative l/m for JC-need $82.50 for copies for removal | Event held as scheduled |
| 05/10/2010 | Main session-Barnstable | Status: Clerk Follow UP money received from deft for removal -received $82.50 | Event held as scheduled |
| 05/12/2010 | Main session-Barnstable | Status: Clerk Follow UP need attested copy of notice of removal | Event held as scheduled |

hereby certify on *4/16/10* that the foregoing document is true and correct copy of ...

☐ electronic docket in the captioned case
☑ electronically filed original filed on *4/16/10*
☐ original filed in my office on

Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts
By: _____
Dy Clerk

**SUPERIOR COURT**
BARNSTABLE SS

FILED    APR 26 2010

_____ Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVEN SURABIAN | ) |
| Plaintiff, | ) |
| v. | ) |
| HSBC BANK USA, NA as TRUSTEE | ) |
| SEQUOIA MORTGAGE TRUST 2004-6, | ) |
| Defendant. | ) |

**10 CA 10643 RWZ**

Civ. No. 10-181

## NOTICE OF REMOVAL

To:    The Honorable Judges of the United States District Court for the District of
Massachusetts

Pursuant to 28 U.S.C. §§ 1441 *et seq.*, Defendant HSBC Bank USA, NA, as Trustee of
the Sequoia Mortgage Trust 2004-6 ("HSBC") hereby removes the action captioned <u>Steven
Surabian v. HSBC Bank USA, NA, as Trustee of the Sequoia Mortgage Trust 2004-6</u>, Civil
Action No. 2010-00181, now pending in the Barnstable County Superior Court for the
Commonwealth of Massachusetts to the United States District Court for the District of
Massachusetts.  In so doing, HSBC states the following:

1.    On or about March 25, 2010, Plaintiff Steven Surabian ("Surabian") filed an
action in the Massachusetts Superior Court, Barnstable County, naming HSBC as a party
defendant.  Along with the complaint, Surabian filed a motion for preliminary injunction.  A
hearing is scheduled on Surabians' motion for Thursday, April 22, 2010 at 2:00 p.m.  Upon
information and belief, no other proceedings have occurred.  A copy of all papers served on
HSBC are attached hereto as **Exhibit A.**

2.      Surabian identifies himself as a resident of Massachusetts. *See* <u>Exhibit A</u>, *Complaint*, ¶ 1. He identifies HSBC as having a place of business located at 10 East 40th Street, 14th Floor, New York, New York. <u>Id.</u>, ¶ 2.

3.      In his three-count complaint, Surabian challenges HSBC's ability to foreclose on property he owns in South Yarmouth, Massachusetts. In Count II, Surabian specifically alleges that he has been damaged as a result of HSBC's actions. He seeks $475,000 in damages. *Complaint*, ¶ 11.

4.      As a result, this Court has original subject matter jurisdiction over this action on the basis of 28 U.S.C. § 1332, as there is complete diversity of citizenship between Surabian and HSBC, and because the matter in controversy exceeds $75,000.

5.      Pursuant to 28 U.S.C. § 1446, RFC's notice of removal is timely as it is filed within thirty (30) days of receipt of the complaint.

6.      Pursuant to 28 U.S.C. § 1446, a copy of this Notice of Removal is being filed with the Massachusetts Superior Court.

7.      Pursuant to Local Rule 81.1, HSBC will file certified or attested to copies of all papers that have been filed in Superior Court.

**WHEREFORE**, HSBC respectfully requests that the above action now pending against it in the Barnstable County Superior Court be removed therefrom to this Court.

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.                                  SUPERIOR COURT
                                                 CIVIL ACTION NO. NO. BACV2010-00181

---

|                                      |   |
| ------------------------------------ | - |
| STEVEN SURABIAN                      | ) |
|                                      | ) |
| Plaintiffs,                          | ) |
|                                      | ) |
| v.                                   | ) |
|                                      | ) |
| HSBC Bank USA, NA as Trustee         | ) |
| Sequoia Mortgage Trust 2004-6        | ) |
|                                      | ) |
| Defendant.                           | ) |
|                                      | ) |

## **NOTICE OF REMOVAL**

Please take notice that, pursuant to 28 U.S.C. § 1441, Defendant HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6, filed a Notice of Removal of the above-captioned action in the United States District Court for the District of Massachusetts on April 16, 2010. A copy of the Notice of Removal is attached hereto as <u>Exhibit A</u>. Defendant will submit a certified copy of the Notice once it is received from the District Court.

Please take further notice that, upon filing of this Notice of Removal with the Clerk of the Barnstable Superior Court, in accordance with 28 U.S.C. § 1446(d), the Superior Court shall proceed no further herein unless and until the case is remanded.

Defendant
HSBC BANK USA, NA as Trustee Sequoia
Mortgage Trust 2004-6

By its attorneys,

Richard E. Briansky, BBO# 632709
rbriansky@princelobel.com
Joseph P. Calandrelli, BBO# 666128
jcalandrelli@princelobel.com
**PRINCE, LOBEL, GLOVSKY & TYE LLP**
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel: 617.456.8000

Dated: April 16, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2010, I served a true copy of the foregoing document on *pro se* ~~defendant~~ Plaintiff by sending the same by overnight mail, postage prepaid to:

Steven Surabian
1230 Rt. 28
South Yarmouth, MA 02664

Joseph P. Calandrelli

#1093647                                              2

# EXHIBIT A

COMMONWEALTH OF
MASSACHUSETTS
BARNSTABLE, SS.

SUPERIOR COURT
DOCKET NO.

_____

STEVEN SURABIAN                )
                    PLAINTIFF  )
        V.                     )
                               )
                               )
HSBC BANK USA, NA AS TRUSTEE   )
SEQUOIA MORTGAGE TRUST         )
2004-6,                        )
              DEFENDANT        )
                               )

VERIFIED
COMPLAINT

JURY DEMAND

DEFENDANTS  PRELIMINARY
INJUNCTION

## COUNT 1

1.    The plaintiffs Steven Surabian is the owner of record of property located at 85 Pond Street, in South Yarmouth, Massachusetts, County of Barnstable, the same being recorded with the Barnstable County Registry of Deeds at Book 18489, Page 333; the said property shall her in after be referred to as "plaintiff's property." ( See attached copy Exhibit "H")

2.    Defendant is doing business at 10 East 40th Street, 14th Floor, New York, NY 10016 .

3.    ASSIGNMENT OF MORTGAGE assigned to Defendant 21st day of December, 2009. (See attached copy Exhibit "A" )

4.    December 9th, 2009 Defendants informed the Plaintiffs of there intent to foreclose. ( See attached copy Exhibit "B")

5.    December 30th, 2009 the Plaintiffs disputed the validity of this debit. ( See attached copy Exhibit "C" )

6.    Four page ADJUSTABLE RATE NOTE supplied by the Defendant, does note have a NOTARY SEAL on any page and only Steven Surabians name no Stephanie LaFlash-Surabian. These can not be anything Steven Surabian signed. ( See attached copy Exhibit "D" )

7.    Fifteen page MORTGAGE supplied by the Defendant is only has the Notary seal on page fourteen. There is not a NOTARY seal attached to the previous thirteen pages, these pages were replaced after signing and before recording. Also there is no page fifteen. ( See attached copy Exhibit "E" )

3/25/10

ELISABETH ROSE ERICKSON
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 05/09/2014

8.    Three page ADJUSTABLE RATE RIDER supplied by the Defendant does not have a NOTARY seal on any page. ( See attached copy Exhibit "F" )

9.    Defendant iscontinuing FORECLOSING on the disputed Mortgage. (See attached Exhibit "G")

WHEREFORE, Plaintiffs prays that this Court will order the Defendant to cease and desist from continuing Foreclosure till the disputed Mortgage and Note are resolved. Plaintiffs make a DEMAND for a jury on the above-described dispute.

## COUNT 11

10.    The plaintiffs reavers the allegations of paragraph 1 thru 9 in this complaint.

11.    As a results of this FORECLOSURE by the defendants of the plaintiffs property the plaintiff has suffered injury in the loss of there property, the loss of rent and the loss of there good name and the loss of the sale of said property.

WHEREFORE, plaintiffs prays that they be awarded damages by this Court for the value of said plaintiffs property in the amount of Four Hundred Seventy-five Thousand Dollars ( $475,000.00 )

Plaintiffs make a demand for a jury on the money damages above-described.

## COUNT 111

12.    The plaintiffs reavers the allegations of paragraph 1 thru 11 in this complaint.

13.    The plaintiffs claim the defendants have failed to follow the necessary requirements for foreclosure exactly

WHEREFORE, plaintiffs pray the Court award the plaintiffs a clear title and the defendants are to give a discharge of the disputed Mortgage and Note or such other relief as may be appropriate.

I Steven Surabian, hereby depose and say under the penalties of perjury that the facts set forth above are true to the best of our knowledge and hereby verify the facts and statements set forth in the above complaint.

Signed under the penalties of perjury this _25_ day of March, 2010.

Steven Surabian Pro Se
1230 Rt. 28, So. Yarmouth, Ma 02664
508-688-4613

ELISABETH ROSE ERICKSON
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 05/09/2014

3|25|10

COMMONWEALTH OF
MASSACHUSETTS
BARNSTABLE, SS.

SUPERIOR COURT
DOCKET NO.

STEVEN SURABIAN                                    )
                          PLAINTIFF                 )          MOTION
                                                    )          PRELIMINARY INJUNCTION
            V.                                      )
                                                    )
                                                    )
HSBC BANK USA, NA AS TRUSTEE                        )
SEQUOIA MORTGAGE TRUST                              )
2004-6,                                             )
                          DEFENDANT                 )

## MOTION PRELIMINARY INJUNCTION

PLAINTIFF, requests a preliminary injunction from the defendants continuing to
FORECLOSE on Plaintiffs property till the disputed Note and Mortgage are resolved by this
Court.

I Steven Surabian, hereby depose and say under the penalties of perjury that the facts
set forth above are true to the best of our knowledge and hereby
verify the facts and statements set forth in the above complaint.

Signed under the penalties of perjury this 25 a day of March, 2010.

Steven Surabian Pro Se
1230 Rt. 28, So. Yarmouth, Ma 02664
508-688-4613

# ASSIGNMENT OF MORTGAGE

Mortgage Electronic Registration Systems, Inc., P.O. Box 2026, Flint, MI 48501, holder of a mortgage from Steven Surabian and Stephanie LaFlash Surabian to Mortgage Electronic Registration Systems, Inc. dated April 23, 2004, recorded with the Barnstable County Registry of Deeds at Book 18489, Page 333 assigns said mortgage to HSBC Bank USA, NA as Trustee for Sequoia Mortgage Trust 2004-6, 10 East 40th Street, 14th Floor, New York, NY 10016 , without recourse.

IN WITNESS WHEREOF, the said Mortgage Electronic Registration Systems, Inc. has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by Francis J. Nolan, Assistant Secretary and Vice President*

this 21ˢᵗ day of December, 2009

Mortgage Electronic Registration Systems, Inc.

By: _____

Francis J. Nolan, Assistant Secretary and Vice President*

*For signatory authority please see Corporate Resolution recorded with the Barnstable County Registry of Deeds at Book 17220, Page 89.

The Commonwealth of Massachusetts

Middlesex, ss

December 21 , 2009

On this 21ᵖ day of December 2009, before me, the undersigned notary public, personally appeared Francis J. Nolan, proved to me through satisfactory evidence of identification, which were personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Capacity: (as Assistant Secretary and Vice President*

for Mortgage Electronic Registration Systems, Inc.     )

_____ (Affix Seal)

Notary Signature

My commission expires: 3/5/2015

200901-2726

EXhiBiT
"A"

Property Address: 85 Pond Street, Yarmouth, MA 02664

**HARMON LAW OFFICES, P.C.**
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

December 9, 2009

Mr. Steven Surabian
1230 Route 28
South Yarmouth, MA 02664

RE:    Mortgage on 85 Pond Street, Yarmouth, Massachusetts

Dear Mr. Surabian:

This office has been retained by GMAC Mortgage, LLC to foreclose on a mortgage from Steven Surabian and Stephanie LaFlash Surabian, in the original principal amount of $201,750.00 dated April 23, 2004, which mortgage is currently held by HSBC Bank USA, National Association as Trustee for SEQUOIA MORTGAGE TRUST 2004-6, under Power of Sale and by entry for breach of the conditions of the loan documents. You are further notified that the note is hereby accelerated and the entire balance is due and payable forthwith and without further notice. Even though the note has been accelerated, you may still have the right to reinstate the loan. If so, and if you desire to reinstate the loan, you will need to pay an amount of money sufficient to bring the loan fully current.

Under the terms of the note and mortgage, there is outstanding through the date of this letter $201,749.99 in principal and $19,175.07 in interest and other charges for a total of **$220,925.06**. Furthermore, attorney's fees and costs and other charges will continue to accrue pursuant to the terms of the loan documents.

The amount necessary to reinstate or pay off the loan changes daily. You may order a reinstatement or payoff 24 hours a day on-line by going to www.hloreinstatement.com or to www.hlopayoff.com. Please follow the instructions contained on the web page. Please note that only requests made by owners, borrowers, mortgagors and authorized parties will be processed. You may also contact us during business hours to request a reinstatement or payoff by calling (617) 558-0598. When completing the on-line form or when calling our office, please reference your Case Number 200901-2726 so that we may process your request more quickly.

*Exhibit "B" Pg 1 of 2*

200901-2726

FCL

/Acceleration Letter - Mortgagor/Surabian,
Steven/Surabian, Stephanie

Unless you, within thirty days after receipt of this notice, dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by this office. If you notify this office in writing within the thirty-day period that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of the judgment against you, if any, and a copy of such verification or judgment will be mailed to you by this office. Upon your written request within the thirty-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

The law does not require this office to wait until the end of the thirty-day period before proceeding with legal action to collect the debt. If, however, you request in writing verification of the debt, or any portion thereof, or the name and address of the original creditor within the thirty-day period which begins with your receipt of this notice, the law requires this office to suspend its efforts (through litigation or otherwise) to collect the debt until it mails the required information to you.

Your failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

Very truly yours,

*Shana Krasnow*

Shana Krasnow, Esquire

SZK/EDB/200901-2726

CERTIFIED MAIL NO.
RETURN RECEIPT REQUESTED

**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

*Exhibit "B"  pg 2 of 2*

Certified Article Number

7160 3901 9848 6106 1220

SENDERS RECORD

Steven Surabian
1230 Route 28
South Yarmouth, Ma 02664

Shana Krasnow, Esquire
Harmon Law Offices, P.C.
150 California Street
Newton, Ma 02458

Case Number 200901-2726

December 30, 2009

I dispute this debt. Please send me all the documents you have which will prove I owe any debt.

Thank You,

*[signature]*

Steven Surabian

*Exhibit "C"*

True and Certified Copy of the
Original

*Signature*

# ADJUSTABLE RATE NOTE
## (Six Month LIBOR Index-Rate Caps)

Loan Number: 0083564765

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| | | |
|---|---|---|
| April 23, 2004 | South Yarmouth | MASSACHUSETTS |
| *[Date]* | *[City]* | *[State]* |

85 Pond Street, Yarthmouth, MA 02664
*[Property Address]*

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $201,750.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is GreenPoint Mortgage Funding, Inc.. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.125%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

(A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first 60 months and then will consist of principal and interest.

I will make my monthly payments on the first day of each month beginning on June, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 908, Newark, NJ 07101-0908, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $525.40. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.



Exhibit "D" 79/0F4

Adjustable Rate Note (Six Month LIBOR Index-Rate Caps)
GreenPoint Mortgage Funding

H0427MU 02/04

G P M W D 0 0 8 3 5 6 4 7 6 5 1 4 0

EXHIBIT "D"
Pg 2 of 4

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
        (A) Change Dates
        The interest rate I will pay may change on the first day of November, 2004 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
        (B) The Index
        Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for Six-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index.."
        If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
        (C) Calculation of Changes
        Before each Change Date, the Note Holder will calculate my new interest rate by adding   One and 750/1000ths percentage points (1.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
        (i)  Interest-Only Payment Period. The "interest-only payment period" is the period from the date of this Note up to but not including June 01, 2009.  For the monthly payments due during the interest-only payment period, after calculating any new interest rate as provided above, the Note Holder will determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.
        (ii)  Amortization Payment Period.  The "amortization payment period" is the period after the interest-only payment period.  For the monthly payment due during the amortization payment period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient    to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
        (D) Limits on Interest Rate Changes
        My interest rate will never be greater than 12.000%.
        (E) Effective Date or Changes
        My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
        (F) Notice or Changes
        The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    BORROWER'S RIGHT TO PREPAY
        I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
        I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    LOAN CHARGES
        If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,

Adjustable Rate Note (Six Month LIBOR Index-Rate Caps)
GreenPoint Mortgage Funding

H0427MU 02/04



G P M W D 0 0 8 3 5 6 4 7 6 5 1 4 0

EXHIBIT "D"
Pg 3 of 4

then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I

G P M W D 0 0 8 3 5 6 4 7 6 5 1 4 0

00

*Exhibit D*
*Pg 4 of 4*

may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Steven Surabian                        -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                              -Borrower

*[Sign Original Only]*



G P M W D 0 0 8 3 5 6 4 7 6 5 1 4 0

(16)

```
Bk 18489 Pg333  #30682
04-23-2004 @ 11:03a
```

After recording please return to:

Graeber, Davis & Cantwell, P.C.
15 Cottage Avenue, 4th Floor
Quincy, MA 02169

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

*[Name of Natural Person]*

981 Airway Court, Suite E
*[Street Address]*

Santa Rosa, CA, 95403-2049
*[City, State Zip Code]*

ExHiBiT
"E"
Pg 1. oF 15

65 Pond St. South Yarmouth MA

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

## DEFINITIONS

MIN: 100013800835647658

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)     "Security Instrument" means this document, which is dated April 23, 2004, together with all Riders to this document.

(B)     "Borrower" is Steven Surabian
STEPHANIE LAFLATH SURABIAN

                                    . Borrower is the mortgagor under this Security Instrument.

(C)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI, 48501-2026, tel. (888) 679-MERS.

(D)     "Lender" is GreenPoint Mortgage Funding, Inc..
Lender is a Corporation organized and existing under the laws of
the State of New York. Lender's address is 100 Wood Hollow Drive, Novato, CA 94945

(E)     "Note" means the promissory note signed by Borrower and dated April 23, 2004.
The Note states that Borrower owes Lender Two Hundred One Thousand Seven Hundred Fifty and 00/100ths
                                                Dollars (U.S. $201,750.00)

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                           MERS Modified Form 3022, 01/01
www.compliancesource.com          Page 1 of 15                    14301MA 08/00
                                                         ©2000, The Compliance Source, Inc.

G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

SS. $ht

(18)

EXHIBIT "E"

Pg 2 of 15

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 01, 2034.

(F)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *(check box as applicable)*:

- [x] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) *(specify)*

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Revocable Trust Rider

- [ ] Second Home Rider
- [ ] Biweekly Payment Rider

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)    "Escrow Items" means those items that are described in Section 3.

(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 2 of 15

MERS Modified Form 3022 01/01
1041MA 2004
©2004, The Compliance Source, Inc.

G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

EXhiBiT "E"
Pg 3 OF 15

Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
County                                 of Barnstable:
      [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

which currently has the address of 85 Pond Street
Yarthmouth                              [Street]
                        [City]        . Massachusetts 02664                    ("Property Address"):
                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                       MERS Modified Form 3022 01/01
www.compliancesource.com          Page 3 of 15                1-04141A  0000
                                                      ©2000, The Compliance Source, Inc.

GPMWD0083564765117



*Exhibit "E"*
*Pg 4 OP 15*

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*Exhibit "E"*

*Pg 5 of 15*

In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                    Page 5 of 15
www.compliancesource.com

MERS Modified Form 3422 01/01
14041MA 08/00
©2000, The Compliance Source, Inc.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*EXHIBIT "E"*

*Pg 6 OF 15*

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 6 of 15

MERS Modified Form 3022  01/01
14501MA  08/00
©2000, The Compliance Source, Inc.

*SLS  ll*

EXHIBIT "E"
Pg 7 OF 15

are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 7 of 15
MERS Modified Form 3022 01/01
14301MA 08/00
©2000, The Compliance Source, Inc.

G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*Exhibit "E"*

*Pg 8 of 15*

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing

Massachusetts Mortgage–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 8 of 15

MERS Modified Form 3022 01/01
1001MA 06/00
©2002, The Compliance Source, Inc.

EXHIBIT "E"

Pg 9 of 15

or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                Page 9 of 15                    MERS Modified Form 3022 01/01
www.compliancesource.com                                                    14301MA 08/00
                                                                            ©2000, The Compliance Source, Inc.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

EXHIBIT "E"
Pg    10 OF 15

not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3022 01/01
—THE COMPLIANCE SOURCE, INC.—                                                                     1001MA 08/00
www.compliancesource.com                          Page 18 of 15                        ©2000, The Compliance Source, Inc.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*Exhibit "E"*
*Pg 11 of 15*

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and

---

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.—                                          MERS Modified Form 3022 01/01
www.compliancesource.com                                                            1041MA 08/00
                                        Page 11 of 15                        ©2000, The Compliance Source, Inc.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

Exhibit "E"
Pg 12 of 15

the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.



GPMWD00835647651.17

SLS SS

EXhIBIT "E"
Pg 13 oP 15

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtsey and dower in the Property.

G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

SLS 88

EXHIBIT "E"
Pg 14 of 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Steven Surabian                        -Borrower
                                       [Printed Name]

_____ (Seal)
STEPHANIE LAFLASH SURABIAN             -Borrower
                                       [Printed Name]

_____ (Seal)
                                       -Borrower
                                       [Printed Name]

_____ (Seal)
                                       -Borrower
                                       [Printed Name]

_____ [Space Below This Line For Acknowledgment] _____

State of  MA
                                    §
County of  Plymouth                 §
                                    §

On this  23  day of  April  2004  , before me personally appeared
STEVEN SURABIAN
STEPHANIE LAFLASH SURABIAN
to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he/she (or they) executed the same as his/her (or their) free act and deed.

        Dominic L. Pang
    Notary Public - Massachusetts
    My Commission Expires         _____
(Seal)    May 14, 2010            Signature


.GPMWD0083564765117

EXHIBIT "F"
Pg 1 of 3

Loan Number: 0083564765

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published by the Wall Street Journal)

THIS ADJUSTABLE RATE RIDER is made this 23rd day of April, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to GreenPoint Mortgage Funding, Inc. ("Lender") of the same date and covering the property described in the Security Instrument and located at:

85 Pond Street, Yarthmouth, MA 02664

Property Address

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 3.125%. The Note provides for changes in the interest rate and the monthly payments, as follows:
4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
     (A) Change Dates
The interest rate I will pay may change on the first day of November, 2004 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

     (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for Six month U.S. dollar-denominated deposits in the London market as published by The Wall Street Journal, "Money Rates" table. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

     (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  One and 750/1000ths percentage points (1.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
     (i) Interest-Only Payment Period. The "interest-only payment period" is the period from the date of this Note Up to but not including June 01, 2009.  For the monthly payments due during the interest-only payment period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on

Adjustable Rate Rider (LIBOR Six Month Index As Published in The Wall Street Journal)-
GreenPoint Mortgage Funding
                                              Page 1 of 3                    EI0458MU 04/02 (Rev. 82/04)



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*EXHIBIT "F"*

*pg 2 OF 3*

the unpaid principal of my loan.  The result of this calculation will be the new amount of my monthly payment.

(ii)  Amortization Payment Period.  The "amortization payment period" is the period after the interest-only period.  For the monthly payments due during the amortization payment period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
My interest rate will never be greater than 12.000%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.      **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*Exhibit "F"*

*Pg 3 of 3*

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)                _____ (Seal)
Steven Surabian                   -Borrower                                          -Borrower

_____ (Seal)                _____ (Seal)
STEPHANIE LAFLASH SURABIAN        -Borrower                                          -Borrower

*[Sign Original Only]*

G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

# HARMON LAW OFFICES, P.C.
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

February 24, 2010

Mr. Steven Surabian
1230 Route 28
South Yarmouth, MA 02664

RE:   HSBC Bank USA, National Association as Trustee for SEQUOIA MORTGAGE TRUST 2004-6
/Surabian, Steven/Surabian, Stephanie
      Case Number: 419177

Dear Mr. Surabian:

Enclosed is a copy of an Order of Notice in connection with the above-referenced matter.

Very truly yours,


Harmon Law Offices, PC
SZK/EDB/200901-2726-Surabian, Steven/Surabian, Stephanie

Enclosure

CERTIFIED MAIL NO.
RETURN RECEIPT REQUESTED

Certified Article Number

7160 3901 9848 7441 0046

SENDERS RECORD

PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

ExhiBiT "9"

pg 1 of 3

200901-2726                              FCL

                                              /ON    Letter    to    Parties/Surabian,
                                              Steven/Surabian, Stephanie

# HARMON LAW OFFICES, P.C.
150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
MAILING ADDRESS:
P.O. BOX 610389
NEWTON HIGHLANDS, MA 02461-0389
TEL (617) 558-0500
FAX (617) 244-7304

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

February 24, 2010

Mr. Steven Surabian
1230 Route 28
South Yarmouth, MA 02664

RE:    HSBC Bank USA, National Association as Trustee for SEQUOIA MORTGAGE TRUST 2004-
8;Surabian, Steven/Surabian, Stephanie
Case Number: 215—

Dear Mr. Surabian:

Enclosed is a copy of an Order of Notice in connection with the above-referenced matter.

Very truly yours,


Harmon Law Offices, PC
SZK/EDB/200901-2726-Surabian, Steven/Surabian, Stephanie

Enclosure

PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*Exhibit "9"*
*pg 2 of 3*

(SEAL)

### THE COMMONWEALTH OF MASSACHUSETTS
### LAND COURT
### DEPARTMENT OF THE TRIAL COURT

To:

Steven Surabian;Stephanie LaFlash Surabian

Case No.
09 MISC 419177

HSBC Bank USA, National Association

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.

HSBC Bank USA, National Association as Trustee for SEQUOIA MORTGAGE TRUST 2004-6

claiming to be the holder of          a          Mortgage
covering real                           property in   Yarmouth,
                                        numbered      85 Pond Street

given by   Steven Surabian and Stephanie LaFlash Surabian to Mortgage Electronic Registration
Systems, Inc., dated April 23, 2004, and  recorded with the Barnstable County Registry of Deeds at Book
18489, Page 333 and now held by the plaintiff by assignment

has filed with said court a complaint for authority to foreclose said mortgage

in the manner following:  by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Servicemembers Civil Relief Act as amended and you object to such
foreclosure  you or your  attorney should file  a written  appearance and answer in  said court at Boston on
or before  APR 1 2 2010

or you may be forever barred from claiming that such foreclosure is invalid under said act.
Witness, **KARYN F. SCHEIER**, Chief Justice of said Court on  FEB 2 3 2010

Attest:

A TRUE COPY
ATTEST

Deborah J. Patterson
RECORDER

Exhibit G Pg 3 of 3

**DEBORAH J. PATTERSON**
**RECORDER**

200901-2726-ORE

*EXHIBIT "H"*
*Pg 1 OF 2*

**RETURN TO:**

Steven Surabian

85 Pond Street

# South Yarmouth, MA 02664

85 Pond Street, South Yarmouth, MA 02664

## QUITCLAIM DEED

We, **STEVEN SURABIAN** and **STEPHANIE LAFLASH SURABIAN**, of South Yarmouth, Barnstable County, Massachusetts, in consideration of One Dollar and Zero Cents ($1.00) paid, paid, grant to **STEVEN SURABIAN**, an unmarried man, with an address of 85 Pond Street, South Yarmouth, Massachusetts, with QUITCLAIM COVENANTS, the following land with the buildings thereon located in Yarmouth (South), Barnstable County, Massachusetts, having a property address of 85 Pond Street, South Yarmouth, Massachusetts, more particularly bounded and described as follows:

BEGINNING at the southeast corner of the granted premises at the northeast corner of Lot 20, as shown on a plan hereinafter mentioned and Pond Street;

RUNNING THENCE South 59° 03' West, one hundred nine and 31/100 (109.31) feet;

THENCE North 31° 44' West by Matthews' land, eighty and 01/100 (80.01) feet to land of Preston Duff, et ux;

THENCE North 59° 03' East by said Duff land, one hundred ten and 40/100 (110.40) feet to Pond Street; and

THENCE South 30° 57' 00" East by Pond Street, eighty and 00/100 (80.00) feet to the northeast corner of Lot 20 as shown on said plan, it being the point of BEGINNING.

Being Lot 19 as shown on a plan of land entitled, "Pawkannawkut Village" duly filed in the Barnstable Registry of Deeds in Plan Book 80, Page 21.

Subject to and together with the benefit of all easements, rights, restrictions and agreements of record, appertaining thereto and to the extent now in force and applicable.

Meaning and hereby intending to convey the same premises conveyed to the Grantors by deed from John J. Butler and Carolyn F. Butler dated April 23, 2004 and recorded on April 23, 2004 with the Barnstable District Registry of Deeds, Book 18489, Page 331.

PROPERTY ADDRESS: 85 Pond Street, South Yarmouth, Massachusetts 02664

All rights of homestead and other interests are also released.

Executed under seal this 19th day of _____May_____, 2006.

*Steven Surabian*

Exhibit "H"
Pg 2 of 2

STEVEN SURABIAN

STEPHANIE LAFLASH SURABIAN

STATE OF Massachusetts )

)

COUNTY OF Worcester )

On this 19th day of May, 2006, before me, the undersigned notary public, personally appeared **STEVEN SURABIAN**, proved to me through satisfactory evidence of identification which was MA License, to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its stated purpose.

______________ (official signature and seal of notary)

My commission expires: 12/8/2011

STATE OF Massachusetts )

)

COUNTY OF Worcester )

TABATHA R. MAGNUSSON
NOTARY PUBLIC
COMMONWEALTH of MASSACHUSETTS
MY COMMISSION EXPIRES
December 08, 2011

On this 19th day of May, 2006, before me, the undersigned notary public, personally appeared **STEPHANIE LAFLASH SURABIAN**, proved to me through satisfactory evidence of identification which was MA License, to be the person whose name is signed on the preceding or attached document and acknowledged to me that she signed it voluntarily for its stated purpose.

______________ (official signature and seal of notary)

My commission expires: 12/8/2011



TABATHA R. MAGNUSSON
NOTARY PUBLIC
COMMONWEALTH of MASSACHUSETTS
MY COMMISSION EXPIRES
December 08, 2011

# Commonwealth of Massachusetts
## County of Barnstable
### The Superior Court

CIVIL DOCKET# BACV2010-00181

Steven Surabian, Plaintiff
vs.
HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6 , Defendant

## SUMMONS AND ORDER OF NOTICE

To the above-named:

    You are hereby summoned and required to serve upon **Steven Surabian**, plaintiff's attorney, whose address is **1230 Route 28 South Yarmouth, MA 02664, ,** an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Barnstable either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    **WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Barnstable County Superior Court, in Barnstable on **04/22/2010, at 02:00 PM in Barnstable Superior Court,** at which time you may appear and show cause why such application should not be granted.

    **Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at Barnstable, Massachusetts this 25th day of March, 2010.

First Assistant Clerk

**(AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)**

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 cvcsumornot_2.wpd 93063 hrgpin robeclio

# Commonwealth of Massachusetts
## County of Barnstable
### The Superior Court

CIVIL DOCKET # **BACV2010-00181**
Courtroom Barnstable Superior Court

RE:    Surabian v HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6
TO:

        Steven Surabian
        1230 Route 28
        South Yarmouth, MA 02664

---

### SCHEDULING ORDER FOR  F  TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **01/14/2012**.

| STAGES OF LITIGATION | DEADLINES | | |
| --- | --- | --- | --- |
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | 06/23/2010 | 06/23/2010 | |
| Response to the complaint filed (also see MRCP 12) | | 07/23/2010 | |
| All motions under MRCP 12, 19, and 20 | 07/23/2010 | 08/22/2010 | 09/21/2010 |
| All motions under MRCP 15 | 07/23/2010 | 08/22/2010 | 09/21/2010 |
| All discovery requests and depositions served and non-expert depositions completed | 01/19/2011 | | |
| All motions under MRCP 56 | 02/18/2011 | 03/20/2011 | |
| Final pre-trial conference held and/or firm trial date set | | | 07/18/2011 |
| Case shall be resolved and judgment shall issue by **01/14/2012** | | | 01/14/2012 |

- The final pre-trial deadline is <u>not the scheduled date of the conference.</u>
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 03/26/2010

                                         Scott W. Nickerson
Telephone: (508) 375-6684                   Clerk of the Court

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 --Check website as to status of case: http://ma-trialcourts.org/tcic  660305 indoc01 robeclio

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Steven Surabian

## DEFENDANTS
HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6

**(b)** County of Residence of First Listed Plaintiff   Barnstable
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   (New York)
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Steven Surabian (Pro Se)  (508-688-4613)
1230 Rt. 28, So. Yarmouth, MA 02664

Attorneys (If Known)
Richard E. Briansky (BBO# 632709), Joseph P. Calandrelli (BBO# 666128), Prince, Lobel, Glovsky & Tye LLP, 100 Cambridge St., Ste. 2200, Boston, MA 02114 (617-456-8000)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     (U.S. Government Not a Party)

☐ 2  U.S. Government
     Defendant

☒ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                       and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original
     Proceeding

☒ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. sec. 1332; 28 U.S.C. sec. 1441

Brief description of cause:
Plaintiff seeks $475,000 from defendant for an allegedly improper foreclosure

## VII. REQUESTED IN
## COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
     UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
## IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  4/16/10

SIGNATURE OF ATTORNEY OF RECORD  Joseph Calandrel

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _Steven Surabian v. HSBC Bank USA, NA_

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

[ ]    I.      160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

[ ]    II.     195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

[✓]   III.     110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                 380, 385, 450, 891.

[ ]   IV.     220, 422, 423, 430, 460, 462, 463, 465, 480, 490, 510, 530, 610,
                 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

[ ]    V.     150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                             YES [ ]      NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

                                                             YES [ ]      NO [✓]

     If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                             YES [ ]      NO [✓]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                             YES [ ]      NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                             YES [✓]      NO [ ]

     A.     If yes, in which division do all of the non-governmental parties reside?

         Eastern Division [✓]          Central Division [ ]          Western Division [ ]

     B.     If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division [ ]          Central Division [ ]          Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                             YES [ ]      NO [✓]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Richard E. Briansky (BBO# 632709 ); Joseph P. Calandrelli (BBO# 666128)_

ADDRESS _Prince, Lobel, Glovsky & Tye LLP, 100 Cambridge St., Suite 2200, Boston, MA 02114_

TELEPHONE NO. _(617) 456-8000_

(CategoryForm-08.wpd -2/8/08)

**D'Orlando, Gina**

| | |
|---|---|
| **From:** | ECFnotice@mad.uscourts.gov |
| **Sent:** | Friday, April 16, 2010 1:35 PM |
| **To:** | CourtCopy@mad.uscourts.gov |
| **Subject:** | Activity in Case 1:10-cv-10643 Surabian v. HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6 Notice of Removal |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered by Calandrelli, Joseph on 4/16/2010 at 1:35 PM EDT and filed on 4/16/2010

| | |
|---|---|
| **Case Name:** | Surabian v. HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6 |
| **Case Number:** | 1:10-cv-10643 |
| **Filer:** | HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6 |
| **Document Number:** | 1 |

**Docket Text:**
**NOTICE OF REMOVAL by HSBC Bank USA, NA as Trustee Sequoia Mortgage Trust 2004-6 from Barnstable, case number 10-10643. ( Filing fee: $ 350, receipt number 0101-2869102 Fee Status: Filing Fee paid) (Attachments: # (1) Affidavit A, # (2) Civil Cover Sheet & Category Sheet)(Calandrelli, Joseph)**

**1:10-cv-10643 Notice has been electronically mailed to:**

Joseph P. Calandrelli    jcalandrelli@princelobel.com, gdorlando@princelobel.com

**1:10-cv-10643 Notice will not be electronically mailed to:**

Steven Surabian
1230 Rt. 28
South Yarmouth, MA 02664

The following document(s) are associated with this transaction:

4/16/2010

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=4/16/2010] [FileNumber=3319949-0
] [a39f8065c458560636da40342e7755ae04d58468282a1f6ea3f88580bef9765c657
b5a7e388450da924aa756e7192bde5c59f89a7605b32e030e9f4e900a2ae0]]
**Document description:** Affidavit A
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=4/16/2010] [FileNumber=3319949-1
] [73ce27623384a1a2cae7e1fc9a0f58b46f7a1505277749b15706880ca6f94b7ccfc
466ffbd337c79bd417cbc236848be852dbbccad9390deed1dfb4ae0dc5c8e]]
**Document description:** Civil Cover Sheet & Category Sheet
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=4/16/2010] [FileNumber=3319949-2
] [6b3c578035150f72ab0ea796be2e53acc4e4fd52498391fef531a5fbb23090de2ea
41bc92d1acaa11803b0a0548331e81dfd6b0ce5f67363f395fac4d12fd6c9]]

COMMONWEALTH OF
MASSACHUSETTS
BARNSTABLE, SS.

SUPERIOR COURT
DOCKET NO.

SUPERIOR COURT
BARNSTABLE SS

FILED MAR 25 2010

_Scott W. Nickerson_ Clerk

2010-181

3-25-10 _as to order of practice only._
_Allowed_ _Robt S Ide_
_1st Just Clerk_

STEVEN SURABIAN

           PLAINTIFF

    V.

HSBC BANK USA, NA AS TRUSTEE
SEQUOIA MORTGAGE TRUST
2004-6,

           DEFENDANT

)
)
)
)
)
)
)
)
)
)
)
)

MOTION
PRELIMINARY INJUNCTION

_REQUEST_

_SHORT ORDER_

## MOTION PRELIMINARY INJUNCTION

      PLAINTIFF, requests a preliminary injunction from the defendants continuing to
FORECLOSE on Plaintiffs property till the disputed Note and Mortgage are resolved by this
Court. _PLAINTIFF REQUESTS A SHORT ORDER._

      I Steven Surabian, hereby depose and say under the penalties of perjury that the facts
set forth above are true to the best of our knowledge and hereby
verify the facts and statements set forth in the above complaint.

      Signed under the penalties of perjury this _25 th_ day of March, 2010.

_Steven Surabian_

Steven Surabian Pro Se
1230 Rt. 28, So. Yarmouth, Ma 02664
508-688-4613

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY: __BARNSTABLE__ | DOCKET NO. 2o1c-181 |
|---|---|---|

**PLAINTIFF(S)** *STEVEN SunzBian*

**DEFENDANT(S)** *HSBC BANK USA, NA AS TRUSTEE SG2401A MONTGAGE TRUST 2004-6*

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
*STEVEN SunzBian*
*P.O. Box 397*
*W. Hyannisport MA 02672*

BBO#

ATTORNEY (IF KNOWN)

SUPERIOR COURT
BARNSTABLE SS

FILED  MAR 25 2010

*Scott W. Nickerson* Clerk

---

### Origin code and track designation

Place an x in one box only:
[ ✓ ] 1. F01 Original Complaint
[  ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[  ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[  ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial)  (X)
[  ] 5. F05 Reactivated after rescript;relief from judgment/ Order (Mass.R.Civ.P. 60)  (X)
[  ] 6. E10 Summary Process Appeal  (X)

---

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.          TYPE OF ACTION (specify)     TRACK          IS THIS A JURY CASE?

*D 99*     *Stop Fore Closmen*                                 (Yes/No)
           *Dischange Note&Montgage*

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

---

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ......................................................... $ _____
    2. Total Doctor expenses ............................................................ $ _____
    3. Total chiropractic expenses ................................................... $ _____
    4. Total physical therapy expenses ............................................ $ _____
    5. Total other expenses (describe) ............................................. $ _____
                             Subtotal $ _____
B. Documented lost wages and compensation to date .......................... $ _____
C. Documented property damages to date ............................................. $ _____
D. Reasonably anticipated future medical and hospital expenses ........... $ _____
E. Reasonably anticipated lost wages ................................................... $ _____
F. Other documented items of damages (describe) $ _____

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Total $

---

### CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL  $...............

---

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

---

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____  Date: *March 25, 2010*

A.O.S.C. 3-2007

COMMONWEALTH OF
MASSACHUSETTS
BARNSTABLE, SS.

SUPERIOR COURT
DOCKET NO. _____
2010-181

SUPERIOR COURT
BARNSTABLE SS

FILED MAR 25 2010

_____ Clerk

CIVIL ENTRY 240-00
9053F000003/25/10SURCHARGE    15.00
9053F000003/25/10SECC    20.00
9053F000003/25/10SUMMONS    5.00

STEVEN SURABIAN

        PLAINTIFF

V.

HSBC BANK USA, NA AS TRUSTEE
SEQUOIA MORTGAGE TRUST
2004-6,

        DEFENDANT

)
)
)
)
)
)
)
)
)
)
)
)

VERIFIED
COMPLAINT

JURY DEMAND

DEFENDANTS  PRELIMINARY
INJUNCTION

## COUNT 1

1.    The plaintiffs Steven Surabian is the owner of record of property located at 85 Pond Street, in South Yarmouth, Massachusetts, County of Barnstable, the same being recorded with the Barnstable County Registry of Deeds at Book 18489, Page 333; the said property shall her in after be referred to as "plaintiff's property." ( See attached copy Exhibit "H")

2.    Defendant is doing business at 10 East 40th Street, 14th Floor, New York, NY 10016 .

3.    ASSIGNMENT OF MORTGAGE assigned to Defendant 21st day of December, 2009. (See attached copy Exhibit "A" )

4.    December 9th, 2009 Defendants informed the Plaintiffs of there intent to foreclose. ( See attached copy Exhibit "B")

5.    December 30th, 2009 the Plaintiffs disputed the validity of this debit. ( See attached copy Exhibit "C" )

6.    Four page ADJUSTABLE RATE NOTE supplied by the Defendant, does note have a NOTARY SEAL on any page and only Steven Surabians name no Stephanie LaFlash-Surabian. These can not be anything Steven Surabian  signed. ( See attached copy Exhibit "D" )

7.    Fifteen page MORTGAGE supplied by the Defendant is only has the Notary seal on page fourteen. There is not a NOTARY seal attached to the previous thirteen pages, these pages were replaced after signing and before recording. Also there is no page fifteen. ( See attached copy Exhibit "E" )

ELISABETH ROSE ERICKSON
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 05/09/2014

8.    Three page ADJUSTABLE RATE RIDER supplied by the Defendant does not have a NOTARY seal on any page. ( See attached copy Exhibit "F" )

9.    Defendant iscontinuing FORECLOSING on the disputed Mortgage. (See attached Exhibit "G")

WHEREFORE, Plaintiffs prays that this Court will order the Defendant to cease and desist from continuing Foreclosure till the disputed Mortgage and Note are resolved. Plaintiffs make a DEMAND for a jury on the above-described dispute.

### COUNT 11

10.    The plaintiffs reavers the allegations of paragraph 1 thru 9 in this complaint.

11.    As a results of this FORECLOSURE by the defendants of the plaintiffs property the plaintiff has suffered injury in the loss of there property, the loss of rent and the loss of there good name and the loss of the sale of said property.

WHEREFORE, plaintiffs prays that they be awarded damages by this Court for the value of said plaintiffs property in the amount of Four Hundred Seventy-five Thousand Dollars ( $475,000.00 )

Plaintiffs make a demand for a jury on the money damages above-described.

### COUNT 111

12.    The plaintiffs reavers the allegations of paragraph 1 thru 11 in this complaint.

13.    The plaintiffs claim the defendants have failed to follow the necessary requirements for foreclosure exactly

WHEREFORE, plaintiffs pray the Court award the plaintiffs a clear title and the defendants are to give a discharge of the disputed Mortgage and Note or such other relief as may be appropriate.

I Steven Surabian, hereby depose and say under the penalties of perjury that the facts set forth above are true to the best of our knowledge and hereby verify the facts and statements set forth in the above complaint.

Signed under the penalties of perjury this _25_ day of March, 2010.

Steven Surabian Pro Se
1230 Rt. 28, So. Yarmouth, Ma 02664
508-688-4613



ELISABETH ROSE ERICKSON
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 05/09/2014

## ASSIGNMENT OF MORTGAGE

Mortgage Electronic Registration Systems, Inc., P.O. Box 2026, Flint, MI 48501, holder of a mortgage from Steven Surabian and Stephanie LaFlash Surabian to Mortgage Electronic Registration Systems, Inc. dated April 23, 2004, recorded with the Barnstable County Registry of Deeds at Book 18489, Page 333 assigns said mortgage to HSBC Bank USA, NA as Trustee for Sequoia Mortgage Trust 2004-6, 10 East 40th Street, 14th Floor, New York, NY 10016 , without recourse.

IN WITNESS WHEREOF, the said Mortgage Electronic Registration Systems, Inc. has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by Francis J. Nolan, Assistant Secretary and Vice President*

this 21st day of December, 2009          Mortgage Electronic Registration Systems, Inc.

By: _____

Francis J. Nolan, Assistant Secretary and Vice President*

*For signatory authority please see Corporate Resolution recorded with the Barnstable County Registry of Deeds at Book 17220, Page 89.

The Commonwealth of Massachusetts

Middlesex, ss                                    December 21 , 2009

On this 21st day of December 2009, before me, the undersigned notary public, personally appeared Francis J. Nolan, proved to me through satisfactory evidence of identification, which were personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Capacity: (as Assistant Secretary and Vice President*

for Mortgage Electronic Registration Systems, Inc.          )

_____ (Affix Seal)
Notary Signature

My commission expires: ___3/5/2015___

200901-2726

EXhiBiT "A"

Property Address: 85 Pond Street, Yarmouth, MA 02664

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

December 9, 2009

Mr. Steven Surabian
1230 Route 28
South Yarmouth, MA 02664

RE:    Mortgage on 85 Pond Street, Yarmouth, Massachusetts

Dear Mr. Surabian:

This office has been retained by GMAC Mortgage, LLC to foreclose on a mortgage from Steven Surabian and Stephanie LaFlash Surabian, in the original principal amount of $201,750.00 dated April 23, 2004, which mortgage is currently held by HSBC Bank USA, National Association as Trustee for SEQUOIA MORTGAGE TRUST 2004-6, under Power of Sale and by entry for breach of the conditions of the loan documents. You are further notified that the note is hereby accelerated and the entire balance is due and payable forthwith and without further notice. Even though the note has been accelerated, you may still have the right to reinstate the loan. If so, and if you desire to reinstate the loan, you will need to pay an amount of money sufficient to bring the loan fully current.

Under the terms of the note and mortgage, there is outstanding through the date of this letter $201,749.99 in principal and $19,175.07 in interest and other charges for a total of **$220,925.06**. Furthermore, attorney's fees and costs and other charges will continue to accrue pursuant to the terms of the loan documents.

The amount necessary to reinstate or pay off the loan changes daily. You may order a reinstatement or payoff 24 hours a day on-line by going to www.hloreinstatement.com or to www.hlopayoff.com. Please follow the instructions contained on the web page. Please note that only requests made by owners, borrowers, mortgagors and authorized parties will be processed. You may also contact us during business hours to request a reinstatement or payoff by calling (617) 558-0598. When completing the on-line form or when calling our office, please reference your Case Number 200901-2726 so that we may process your request more quickly.

*ExhiBiT "B"  Pg 1 of 2*

/Acceleration Letter - Mortgagor/Surabian,
Steven/Surabian, Stephanie

Unless you, within thirty days after receipt of this notice, dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by this office. If you notify this office in writing within the thirty-day period that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of the judgment against you, if any, and a copy of such verification or judgment will be mailed to you by this office. Upon your written request within the thirty-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

The law does not require this office to wait until the end of the thirty-day period before proceeding with legal action to collect the debt. If, however, you request in writing verification of the debt, or any portion thereof, or the name and address of the original creditor within the thirty-day period which begins with your receipt of this notice, the law requires this office to suspend its efforts (through litigation or otherwise) to collect the debt until it mails the required information to you.

Your failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

Very truly yours,

*Shana Krasnow*

Shana Krasnow, Esquire

SZK/EDB/200901-2726

CERTIFIED MAIL NO.
RETURN RECEIPT REQUESTED

**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Certified Article Number

7160 3901 9848 6106 1220

SENDERS RECORD

*Exhibit "B" pg 2 of 2*

Steven Surabian
1230 Route 28
South Yarmouth, Ma 02664

Shana Krasnow, Esquire
Harmon Law Offices, P.C.
150 California Street
Newton, Ma 02458


Case Number 200901-2726

December 30, 2009

I dispute this debt. Please send me all the documents you have which will prove I owe any debt.


Thank You,

*[signature]*

Steven Surabian

EXhiBiT "C"

True and Certified Copy of the
Original

_Signature_

Loan Number: 0083564765

# ADJUSTABLE RATE NOTE
## (Six Month LIBOR Index-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| April 23, 2004 | South Yarmouth | MASSACHUSETTS |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

85 Pond Street, Yarthmouth, MA 02664
*[Property Address]*

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $201,750.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is GreenPoint Mortgage Funding, Inc..
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.125%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 60 months and then will consist of principal and interest.

I will make my monthly payments on the first day of each month beginning on June, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 908, Newark, NJ 07101-0908, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $525.40. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

EXHIBIT "D" Pg 1 OF 4



G P M W D 0 0 8 3 5 6 4 7 6 5 1 4 0

*EXHIBIT "D"*
*Pg 2 of 4*

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
     **(A) Change Dates**
     The interest rate I will pay may change on the first day of **November, 2004** and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
     **(B) The Index**
     Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for Six-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index.."
     If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
     **(C) Calculation of Changes**
     Before each Change Date, the Note Holder will calculate my new interest rate by adding **One and 750/1000ths** percentage points (**1.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
          **(i) Interest-Only Payment Period.** The "interest-only payment period" is the period from the date of this Note up to but not including **June 01, 2009.** For the monthly payments due during the interest-only payment period, after calculating any new interest rate as provided above, the Note Holder will determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.
          **(ii) Amortization Payment Period.** The "amortization payment period" is the period after the interest-only payment period. For the monthly payment due during the amortization payment period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient    to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
     **(D) Limits on Interest Rate Changes**
     My interest rate will never be greater than **12.000%.**
     **(E) Effective Date or Changes**
     My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
     **(F) Notice or Changes**
     The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    **BORROWER'S RIGHT TO PREPAY**
     I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
     I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    **LOAN CHARGES**
     If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,



G P M W D 0 0 8 . 3 5 6 . 4 7 6 5 1 4 0

*Exhibit D*
*Pg 3 of 4*

then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.     BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.     GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**10.     WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.     UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I



G P M W D 0 0 8 3 5 6 4 7 6 5 1 4 0

PD

*Exhibit D*
*Pg 4 of 4*

may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Steven Surabian                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

Bk 18489 Pg333 #30682
04-23-2004 @ 11:03a

After recording please return to:

Graeber, Davis & Cantwell, P.C.
15 Cottage Avenue, 4th Floor
Quincy, MA 02169

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

*[Name of Natural Person]*

981 Airway Court, Suite E
*[Street Address]*

Santa Rosa, CA, 95403-2049
*[City, State Zip Code]*

EXHIBIT
"E"
Pg 1 of 15

65 Pond St. S. Yarmouth MA

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

MIN: 100013800835647658

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**    "**Security Instrument**" means this document, which is dated **April 23, 2004**, together with all Riders to this document.

**(B)**    "**Borrower**" is Steven Surabian

STEPHANIE LAFLASH SURABIAN

. Borrower is the mortgagor under this Security Instrument.

**(C)**    "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)**    "**Lender**" is GreenPoint Mortgage Funding, Inc.. Lender is a Corporation organized and existing under the laws of the State of New York. Lender's address is 100 Wood Hollow Drive, Novato, CA 94945

**(E)**    "**Note**" means the promissory note signed by Borrower and dated **April 23, 2004**. The Note states that Borrower owes Lender  Two Hundred One Thousand Seven Hundred Fifty  and 00/100ths
                                                            Dollars (U.S. $201,750.00)



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*EXHIBIT "E"*

*Pg 2 of 15*

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 01, 2034.

**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *[check box as applicable]*:

☒ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider ☐ Revocable Trust Rider
☐ Other(s) *[specify]*

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7



Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
County                                of Barnstable:
    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

which currently has the address of 85 Pond Street
                                [Street]
Yarthmouth                        , Massachusetts 02664                    ("Property Address"):
          [City]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

*Exhibit "E"*

*Pg 4 of 15*

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 4 of 15
MERS Modified Form 3022 01/01
14001MA 08/00
©2000, The Compliance Source, Inc.

*Exhibit "E"*

*Pg 5 oF 15*

In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.



*Exhibit "E"*

*Pg 6 of 15*

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights



*Exhibit "E"*
*Pg 7 oP 15*

are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Massachusetts Mortgage-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
—**THE COMPLIANCE SOURCE, INC.**—          Page 7 of 15
www.compliancesource.com

MERS Modified Form 3022 01/01

1430IMA 08/00
©2000, The Compliance Source, Inc.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*EXHiBiT "E"*

*Pg 8 oF 15*

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7



EXHIBIT "E"

Pg 9 of 15

or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7



not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

*Exhibit "E"*
*Pg 11 of 15*

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and



*G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7*

*Exhibit "E"*

*Pg 12 of 15*

the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7



EXhIBIT "E"
Pg 13 OF 15

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.



G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7



EXHIBIT "E"
Pg 14 of 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Steven Surabian                                    -Borrower
                                                   [Printed Name]

_____ (Seal)
STEPHANIE LAFLASH SURABIAN          -Borrower
                                                   [Printed Name]

_____ (Seal)
                                                   -Borrower
                                                   [Printed Name]

_____ (Seal)
                                                   -Borrower
                                                   [Printed Name]

_____ [Space Below This Line For Acknowledgment] _____

State of    MA                        §
                                      §
County of   Plymouth                  §

On this    23    day of  April  2004  , before me personally appeared
          STEVEN  SURABIAN
          STEPHANIE  LAFLASH  SURABIAN

to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he/she (or they) executed the same as his/her (or their) free act and deed.

                    Dominic L. Pang
                Notary Public - Massachusetts
                  My Commission Expires      Signature _____
(Seal)               May 14, 2010



.GPMWD0083564765117



*EXHIBIT "F"*
*Pg 1 of 3*

Loan Number: 0083564765

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published by the Wall Street Journal)

THIS ADJUSTABLE RATE RIDER is made this 23rd day of April, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to GreenPoint Mortgage Funding, Inc. ("Lender") of the same date and covering the property described in the Security Instrument and located at:

85 Pond Street, Yarthmouth, MA 02664

Property Address

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.      INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 3.125%. The Note provides for changes in the interest rate and the monthly payments, as follows:
4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES
      (A) Change Dates
The interest rate I will pay may change on the first day of November, 2004 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

      (B) The Index
            Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for Six month U.S. dollar-denominated deposits in the London market as published by The Wall Street Journal, "Money Rates" table. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
            If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

      (C) Calculation or Changes
            Before each Change Date, the Note Holder will calculate my new interest rate by adding   One and 750/1000ths percentage points (1.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
            (i)  Interest-Only Payment Period. The "interest-only payment period" is the period from the date of this Note Up to but not including June 01, 2009.  For the monthly payments due during the interest-only payment period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on



G  P  M  W  D  0  0  8  3  5  6  4  7  6  5  1  1  7

EXHIBIT "F"
pg 2 OF 3

the unpaid principal of my loan.  The result of this calculation will be the new amount of my monthly payment.

(ii)  Amortization Payment Period.  The "amortization payment period" is the period after the interest-only period.  For the monthly payments due during the amortization payment period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
My interest rate will never be greater than 12.000%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.



G  P  M  W  D  0  0  0  8  3  5  6  4  7  6  5  1  1  7

*Exhibit "F"*

*Pg 3 of 3*

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
Steven Surabian                      -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
STEPHANIE LAFLASH SURABIAN     -Borrower                                              -Borrower

*[Sign Original Only]*

Adjustable Rate Rider (LIBOR Six Month Index (As Published In The Wall Street Journal)-
GreenPoint Mortgage Funding                    Page 3 of 3                    H04SRMU 04/02 (Rev. 02/04)

G P M W D 0 0 8 3 5 6 4 7 6 5 1 1 7

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL (617) 558-0500
FAX (617) 244-7304

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

February 24, 2010

Mr. Steven Surabian
1230 Route 28
South Yarmouth, MA 02664

RE:   HSBC Bank USA, National Association as Trustee for SEQUOIA MORTGAGE TRUST 2004-6
/Surabian, Steven/Surabian, Stephanie
      Case Number: 419177

Dear Mr. Surabian:

Enclosed is a copy of an Order of Notice in connection with the above-referenced matter.

Very truly yours,

Harmon Law Offices, PC
SZK/EDB/200901-2726-Surabian, Steven/Surabian, Stephanie

Enclosure

CERTIFIED MAIL NO.
RETURN RECEIPT REQUESTED

Certified Article Number

7160 3901 9848 7441 0046

SENDERS RECORD

PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*Exhibit "9"*

*pg 1 of 3*

200901-2726                            FCL                  /ON    Letter    to    Parties/Surabian,
                                                           Steven/Surabian, Stephanie

## HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
MAILING ADDRESS:
P.O. BOX 610389
NEWTON HIGHLANDS, MA 02461-0389
TEL (617) 558-0500
FAX (617) 244-7304

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

February 24, 2010

Mr. Steven Surabian
1230 Route 28
South Yarmouth, MA 02664

RE:    HSBC Bank USA, National Association as Trustee for SEQUOIA MORTGAGE TRUST 2004-
5 Surabian, Steven/Surabian, Stephanie
       Case Number: 419177

Dear Mr. Surabian:

Enclosed is a copy of an Order of Notice in connection with the above-referenced matter.

Very truly yours,

Harmon Law Offices, PC
SZK/EDB/200901-2726-Surabian, Steven/Surabian, Stephanie

Enclosure

PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit "9"
pg 2 of 3

(SEAL)

**THE COMMONWEALTH OF MASSACHUSETTS**
**LAND COURT**
**DEPARTMENT OF THE TRIAL COURT**

LAND COURT
FILED
2009 DEC 23 PM 2:10

To:

Steven Surabian;Stephanie LaFlash Surabian

Case No.
09 MISC 419177



and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.

HSBC Bank USA, National Association as Trustee for SEQUOIA MORTGAGE TRUST 2004-6

claiming to be the holder of        a                Mortgage
    ering real                          property in    Yarmouth,
                                        numbered    85 Pond Street

given by    .Steven Surabian and Stephanie LaFlash Surabian to Mortgage Electronic Registration
Systems, Inc., dated April 23, 2004, and  recorded with the Barnstable County Registry of Deeds at Book
18489, Page 333 and now held by the plaintiff by assignment

has filed with said court a complaint for authority to foreclose said mortgage

in the manner following:  by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Servicemembers Civil Relief Act as amended and you object to such
foreclosure  you or your  attorney should file  a written  appearance and answer in  said court at Boston on
or before    APR 1 2 2010

or you may be forever barred from claiming that such foreclosure is invalid under said act.
Witness, **KARYN F. SCHEIER**, Chief Justice of said Court on  FEB 2 3 2010

A TRUE COPY
ATTEST:

Attest:    _Deborah J. Patterson_
    RECORDER

EXHIBIT "G" PG 3 OF 3

**DEBORAH J. PATTERSON**
**RECORDER**

200901-2726-ORE

*EXHIBIT "H"*
*Pg 1 of 2*

RETURN TO:

Steven Surabian

85 Pond Street

# South Yarmouth, MA 02664

85 Pond Street, South Yarmouth, MA 02664

## QUITCLAIM DEED

We, **STEVEN SURABIAN** and **STEPHANIE LAFLASH SURABIAN**, of South Yarmouth, Barnstable County, Massachusetts, in consideration of One Dollar and Zero Cents ($1.00) paid, paid, grant to **STEVEN SURABIAN**, an unmarried man, with an address of 85 Pond Street, South Yarmouth, Massachusetts, with QUITCLAIM COVENANTS, the following land with the buildings thereon located in Yarmouth (South), Barnstable County, Massachusetts, having a property address of 85 Pond Street, South Yarmouth, Massachusetts, more particularly bounded and described as follows:

BEGINNING at the southeast corner of the granted premises at the northeast corner of Lot 20, as shown on a plan hereinafter mentioned and Pond Street;

RUNNING THENCE South 59° 03' West, one hundred nine and 31/100 (109.31) feet;

THENCE North 31° 44' West by Matthews' land, eighty and 01/100 (80.01) feet to land of Preston Duff, et ux;

THENCE North 59° 03' East by said Duff land, one hundred ten and 40/100 (110.40) feet to Pond Street; and

THENCE South 30° 57' 00" East by Pond Street, eighty and 00/100 (80.00) feet to the northeast corner of Lot 20 as shown on said plan, it being the point of BEGINNING.

Being Lot 19 as shown on a plan of land entitled, "Pawkannawkut Village" duly filed in the Barnstable Registry of Deeds in Plan Book 80, Page 21.

Subject to and together with the benefit of all easements, rights, restrictions and agreements of record, appertaining thereto and to the extent now in force and applicable.

Meaning and hereby intending to convey the same premises conveyed to the Grantors by deed from John J. Butler and Carolyn F. Butler dated April 23, 2004 and recorded on April 23, 2004 with the Barnstable District Registry of Deeds, Book 18489, Page 331.

**PROPERTY ADDRESS**: 85 Pond Street, South Yarmouth, Massachusetts 02664

All rights of homestead and other interests are also released.

Executed under seal this _19th_ day of _May_, 2006.

_Steven Surabian_

*Exhibit H*

*Pg 2 of 2*

STEVEN SURABIAN

*Stephanie La Flash Surabian*

# STEPHANIE LAFLASH SURABIAN

STATE OF *Massachusetts* )

)

COUNTY OF *Worcester* )

On this *19th* day of *May*, 2006, before me, the undersigned notary public, personally appeared **STEVEN SURABIAN**, proved to me through satisfactory evidence of identification which was *MA license*, to be the person whose name is signed on the preceding or attached document and acknowledged to me that he signed it voluntarily for its stated purpose.

*Tabatha R. Magnusson* (official signature and seal of notary)

My commission expires: *12/8/2011*

TABATHA R. MAGNUSSON
NOTARY PUBLIC
COMMONWEALTH of MASSACHUSETTS
MY COMMISSION EXPIRES
December 08, 2011

STATE OF *Massachusetts* )

)

COUNTY OF *Worcester* )

On this *19th* day of *May*, 2006, before me, the undersigned notary public, personally appeared **STEPHANIE LAFLASH SURABIAN**, proved to me through satisfactory evidence of identification which was *MA license* to be the person whose name is signed on the preceding or attached document and acknowledged to me that she signed it voluntarily for its stated purpose.

*Tabatha R. Magnusson* (official signature and seal of notary)

My commission expires: *12/8/2011*

TABATHA R. MAGNUSSON
NOTARY PUBLIC
COMMONWEALTH of MASSACHUSETTS
MY COMMISSION EXPIRES
December 08, 2011